UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL NO. 14-10304-DPW |
| DAGOBERTO OLEA, | |
| Defendant. | |

**REVISED REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS[1] (Dkt. No. 151)**

August 12, 2016

CABELL, U.S.M.J.

Defendant Dagoberto Olea ("Olea" or "the defendant") has moved to dismiss Count One of a superseding indictment ("the Indictment") charging him with conspiring to distribute and to possess with intent to distribute 1,000 kilograms or more of marijuana in Massachusetts and California, in violation of 21 U.S.C. § 846 of the Controlled Substances Act ("CSA").[2] Olea allegedly helped co-defendant Michael Gordon ("Gordon") procure marijuana in California, which Gordon then caused to be transported to Massachusetts. Olea advances several arguments

---

[1] This Revised Report and Recommendation corrects a misstatement contained in the original Report and Recommendation issued on August 5, 2016. In Section II, part A, the Court recites the elements the government must prove beyond a reasonable doubt in order to prove a drug trafficking conspiracy in violation of 21 U.S.C. § 846. The Court issues this revised Report and Recommendation to clarify that the government is not required to prove that the defendant, or any co-conspirator, committed an overt act in furtherance of the conspiracy. The original Report and Recommendation mistakenly indicated that it was necessary to show at a minimum that at least one person committed an act in furtherance of the conspiracy.

[2] Count One also charges co-defendants Gordon, Andrean Jaggon and Daphne Jean with participating in the marijuana trafficking conspiracy. Olea is named only in Count One; the Indictment contains 13 other counts charging one or more of the other defendants with conspiracy to money launder, in violation of 18 U.S.C. § 1956(h), and money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.

in support of his motion but the gravamen of his claim is that he cannot be found to have violated

federal law, even assuming he did help Gordon procure large amounts of marijuana, because

everything he did took place entirely inside the state of California.  As discussed below, the

Court finds the defendant's arguments to be without merit and recommends that the motion to

dismiss be denied.

## I.     BACKGROUND

### A.     Relevant Facts

Olea has submitted an affidavit stating that, during the period of the alleged conspiracy,

he did not have contact with federal law enforcement, did not visit Massachusetts, and did not

send or transport anything to Massachusetts.  (Dkt. No. 151-1).  Olea has not otherwise

challenged the allegations in the Indictment, or the affidavits and declarations submitted by

Department of Homeland Security Special Agent Richard Atwood, and he agreed at a prior

hearing that there was no need to convene an evidentiary hearing where his arguments are legal

rather than factual ones.  Accordingly, the Court treats the government's factual allegations as

true for purposes of the present motion.

The Indictment alleges that the defendants conspired from at least July 2011 until

November 2014 to distribute and to possess with intent to distribute marijuana in the District of

Massachusetts, the Northern District of California, and elsewhere.  (Dkt. No. 120).  During that

time, co-defendant Gordon flew on a number of occasions from Boston to Northern California.

Typically, he would then rent a vehicle and drive hundreds of miles to Olea's residence in

Redwood Valley, California.  (Dkt. No. 14, ¶¶ 29, 31).  Aerial surveillance of Olea's residence in

May 2012 and July 2013 revealed marijuana plants being cultivated on the property.  (*Id.*).

Moreover, a large marijuana cultivation operation was discovered on Olea's property during a

May 2013 search conducted by local law enforcement authorities.  (*Id.* at ¶ 23).  Gordon would remain at Olea's residence for one or two days and then drive back to San Francisco on the mornings of his return flights to Boston.  (*Id.* at ¶ 32)

While in San Francisco, Gordon was repeatedly observed by surveillance agents traveling to post offices and FedEx facilities, where he would mail numerous packages to Boston, using nonexistent names at real Boston addresses.  (*Id.*)  USPS and FedEx records revealed that between July 6, 2011 and February 24, 2014, Gordon mailed at least 316 packages from San Francisco to Boston.  (Dkt. No. 163-1, ¶ 7).  Search warrants for twenty of those packages demonstrated that approximately half of the weight of each package was marijuana, with the other half divided between packing materials and the boxes' weight.  (*Id.*)  Using a conservative estimate that only one-third of the weight of the unseized packages was marijuana, officers extrapolated that Gordon shipped at least 2,890 pounds of marijuana, obtained from Olea, between July 2011 and February 2014.  (*Id.*)  To date, officers have recovered currency transaction reports evidencing Gordon's transfer of approximately $800,000 to Olea and his brother.  (Dkt. No. 14, ¶ 23).

### B.    The Defendant's Motion

Olea filed an initial motion to dismiss on October 2, 2015 along with a legal memorandum, and on October 14, 2015 filed an amended motion (with no additional memorandum) to correct some non-substantive errors.  (Dkt. Nos. 128, 129, 151).  The amended motion is thus the operative motion and it is referred to here as the "motion" for the sake of brevity.  The motion articulates five separate grounds for relief while the memorandum addresses those grounds through four principal arguments.  The Court addresses the arguments as set out in the defendant's memorandum.

The motion appears to rest at least in part on the premise that distribution of medical marijuana is lawful under some circumstances in California.  Olea does not assert that this case involves medical marijuana, or that he personally had a legal right to distribute marijuana under California law, but he appears to posit that the differences in the way federal and California law treat marijuana distribution implicate serious constitutional concerns requiring dismissal of the indictment.  He argues that: (1) the Indictment must be dismissed because there is no evidence he had knowledge of the interstate aspect of the charged conspiracy, that is, that the California-grown marijuana he distributed to Gordon was going to be exported to Massachusetts; (2) the prosecution violates the Tenth Amendment's concept of federalism because the manner in which the CSA is enforced encourages the federal government to treat citizens of states where marijuana has been partially decriminalized differently than citizens of states where it remains entirely criminalized; (3) the prosecution violates the defendant's due process rights because the government seeks to prosecute him for conduct that may be lawful within California; and (4) the prosecution violates the Fifth Amendment's equal protection clause because there is no rational basis to treat marijuana as a controlled substance.

## II.    ANALYSIS

### A.  <u>The Indictment Contains All of the Necessary Elements of Conspiracy</u>

Olea argues that the conspiracy charge must be dismissed because: (1) he did not further the interstate distribution of marijuana and lacked knowledge of an "essential feature" of the criminal venture, *i.e.,* exporting California-grown marijuana to Massachusetts; and (2) the government failed to present evidence to the grand jury demonstrating Olea's knowledge of Gordon's interstate distribution of marijuana.  (Dkt. No. 129).  This argument fails easily.

To convict a defendant of conspiring to distribute and to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, the government must prove: (1) that the agreement specified in the indictment existed between at least two people; and (2) that the defendant willfully joined in that agreement. *See* Pattern Jury Instructions: First Circuit, Criminal Cases § 4.18.371(1), Committee on Pattern Criminal Jury Instructions – First Circuit 1998 Edition, Updated April 13, 2016 by Judge Torresen, at p. 107 (hereinafter, "Pattern Jury Instructions"). The government is not required to prove that Olea committed an overt act in furtherance of the conspiracy. *See United States v. Shabani*, 513 U.S. 10, 11 (1994); *Whitfield v. U.S.*, 543 U.S. 209, 215 (2005). Indeed, it is not necessary to show that the defendant knew about, understood, or specifically agreed to all details of the crime so long as he shared a general understanding of the criminal venture. Pattern Jury Instructions at p. 107.

Specifically addressing Olea's core claim, it is not necessary to show that Olea knew or intended that the marijuana he provided to Gordon would be distributed outside of California. *Gonzales v. Raich*, 545 U.S. 1, 9 (2005) (holding that the CSA is a valid exercise of federal power and that federal authorities may enforce the CSA even against those engaged in purely intrastate marijuana use that is legal under state law). Olea can be found guilty of violating § 846 if he conspired to distribute marijuana at all, regardless of whether he had the knowledge or intent that the marijuana would be exported to Massachusetts. *Id.*

Finally, and as the government points out, even assuming the government were required to show that Olea knew the marijuana he procured for Gordon was to be exported out of California, there is ample evidence from which one could reasonably infer such knowledge. Gordon made repeated trips to California from Massachusetts to Olea's residence to obtain thousands of pounds of marijuana before returning to Massachusetts. Further, Olea was

5

subsequently arrested in a car rented by Gordon while transporting nine boxes of marijuana.

Further still, Gordon transferred hundreds of thousands of dollars to Olea from Gordon's

Massachusetts bank accounts.  Taken together, these facts would easily support a reasonable

inference that Olea repeatedly sold large amounts of marijuana to Gordon knowing Gordon

would in turn transport the marijuana out of California, most likely to Massachusetts.

In short, the Indictment adequately alleges all elements of the offense charged and there

was in any event ample evidence to substantiate probable cause that Olea knew he was

distributing marijuana outside of California.[3]

## B. Olea's Federal Prosecution Does Not Violate Equal Sovereignty or the Tenth Amendment

Olea argues that the Indictment violates principles of "federalism" and the "equal

sovereignty" of the states in violation of the Tenth Amendment.  Federalism is the term used to

refer to the constitutional relationship between the U.S. states and the federal government,

although the word does not actually appear in the U.S. Constitution itself.  The Tenth

Amendment helps to define the concept of federalism because it holds that powers that are not

delegated to the United States by the Constitution are reserved to the states.  Implicit within the

Tenth Amendment, the concept of "equal sovereignty" provides that federal laws that do apply to

the states must be applied evenly and a state may not be singled out for differential treatment

unless it is justified by current needs and "sufficiently related to the problem that it targets."

---

[3] Olea also appears to argue that, because California and federal law both criminalize marijuana distribution, there is no positive conflict between the federal and state legislative schemes in this area, and therefore no federal preemption, and state jurisdiction therefore must control pursuant to 21 U.S.C. § 903.  The Supreme Court has considered and rejected this notion; California's laws regarding the lawfulness *vel non* of possession and distribution of marijuana cannot be used as a shield to prevent a federal prosecution for violation of federal law.  *Raich,* 545 U.S. at 29.

*Shelby County v. Holder*, 133 S. Ct. 2612, 2627 (2013) (citing *Northwest Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 204 (2009)).

Against this backdrop, Olea contends that federal laws relating to the classification of marijuana as a Schedule I substance under the CSA are unjustified because the conditions validating marijuana's inclusion in Schedule I no longer comport with medical and scientific evidence regarding its dangers.  He argues also that the policy articulated in the *Memorandum For All United States Attorneys*, issued on August 29, 2013, by Deputy Attorney General James Cole (Dkt. No. 130, Ex. C) (hereinafter, "Cole Memo"), sets up a scheme that encourages the prosecution of individuals in states where marijuana is criminalized but discourages the prosecution of those in states where distribution of marijuana has been partially or entirely decriminalized.  He argues that this combination of an outdated classification with a policy of discriminatory prosecution violates the Tenth Amendment and the principle of equal sovereignty because it has resulted in an uneven and unlawful application of federal law depending on the state where one resides.

The Court rejects this argument.  First, to the extent the defendant's argument relies on a challenge to the continued classification of marijuana under the CSA, the Supreme Court has held that the CSA represents a proper exercise of Congress' authority under the Commerce Clause.  *Raich,* 545 U.S. at 15-22, 32-33.  Accordingly, the Tenth Amendment inquiry ends there and there is no need to consider equal sovereignty concerns.  *Id.; United States v. Brecker,* No. 4:14CR250 CDP (TIA), 2015 WL 1565355, *5 (E.D. Mo. Apr. 8, 2015).

Moreover, Olea's characterization of the Cole Memo and what it purports to do is incorrect.  The Court agrees with the government that the Cole Memo does not shelter from federal prosecution those who distribute marijuana in states that have partially decriminalized

such conduct.  Rather, it serves as a guide to the exercise of investigative and prosecutorial

discretion and does not alter the authority of the Department of Justice to enforce federal laws

relating to marijuana, regardless of state law.  (*See* Dkt. No. 365–1 at p. 4).  Among the eight

listed priorities, the memo includes "preventing revenue from the sale of marijuana from going

to criminal enterprises, gangs, and cartels," "preventing violence from the use of firearms in the

cultivation and distribution of marijuana," and "preventing the diversion of marijuana from states

where it is legal under state law in some form to other states."  (Dkt. No. 130).  The memo

directs prosecutors to focus their resources and efforts on "persons or organizations whose

conduct interferes with any one or more of these priorities" in *all* cases and in *all* jurisdictions,

"regardless of state law."  (*Id.*)  Thus, it does *not* alter the Department of Justice's authority to

enforce federal marijuana laws.  Because the Cole Memo applies evenly to all states, and

because the defendant's conduct implicates several federal enforcement priorities, his

prosecution does not violate principles of equal sovereignty.

      The defendant's reliance on *Shelby County* for support to the contrary is unavailing.  That

case involved a portion of the Voting Rights Act (VRA), a federal statute regulating the conduct

of state elections, a power clearly committed to the states.  *Shelby County,* 133 S. Ct. at 2623

(stating that the states were intended to "keep for themselves, as provided in the Tenth

Amendment, the power to regulate elections").  The Supreme Court in *Shelby County* addressed

the principle of equal sovereignty because the case involved a power ordinarily committed to the

states, and noted that the federal government must show that burdens created by disparate

treatment of the states are justified by current needs.  *Id.* at 2627 (citing *Northwest Austin Mun.

Util. Dist. No. One,* 557 U.S. at 203).  Because the Supreme Court found that the justification for

federal supervision of state election procedures in those states covered by the VRA no longer

existed, that portion of the VRA no longer comported with the Tenth Amendment. *Id. Shelby County* is thus distinguishable not only because it involved an area of regulation traditionally reserved to the states, but also because the CSA, unlike the Voting Rights Act, criminalizes marijuana distribution in all 50 states and does not treat different states differently.

## C. Olea's Prosecution Does Not Violate Due Process

The defendant argues that prosecuting him for conspiracy to violate federal drug laws would violate his right to due process.  The defendant reasons that because he committed all of his acts inside of California, and never personally transferred any marijuana outside of California, the federal government "is restricted from imposing [its] jurisdiction on a right solely within the jurisdiction of the States." (Dkt. No. 129).  To make this argument, Olea urges that he is a farmer whose crop is marijuana, in a state that allows the personal cultivation of (medical) marijuana, as well as marijuana distribution in "certain circumstances." (*Id.*)  From there he alleges that the right "to an occupation, to farm marijuana," is retained by the states under the Ninth Amendment. (*Id.*)  Then, analogizing to *Dred Scott v. Sandford*, 60 U.S. 393 (1857), Olea posits that, like the slave-owner, his due process rights were violated because he forfeited his liberty and property, marijuana, when the marijuana traveled from one state that allowed its cultivation and distribution to Massachusetts, a jurisdiction that did not.

As an initial matter, this argument fails on its face because Olea has neither provided evidence nor even directly asserted that he possesses a license to grow, sell or possess marijuana in the state of California, or that the marijuana he cultivated was medical marijuana. (Dkt. No. 129).  But even assuming that he was a licensed marijuana grower, his due process argument is equally without force.  *Dred Scott* is inapposite to the defendant's case because the Supreme Court's analysis in that case was based upon Congress's lack of authority to regulate slavery.  By

contrast, Congress does have the authority to prohibit marijuana distribution.  *Raich*, 545 U.S. at 9.  Because the defendant's prosecution comports with congressional authority to prohibit marijuana distribution, it does not violate his due process rights.

### D.  Olea's Prosecution Does Not Violate the Equal Protection Clause of the Fifth Amendment

Olea contends that because current medical and scientific research "overwhelmingly" establishes the benefits of medical marijuana, there is no rational basis for treating marijuana as a controlled substance.  He argues that including marijuana as a Schedule I substance under the CSA violates the Fifth Amendment's Equal Protection Clause because the classification is unjustified and "arbitrary," and a decision to prosecute may not be based on an unjustified standard such as an arbitrary classification.  Olea argues that the inclusion of marijuana within Schedule I cannot survive rational basis review where it bears no relationship to an independent and legitimate legislative end.  *See United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013).  He argues further that application of the Cole Memo has led to disparate geographic treatment under federal law to the extent it protects some individuals for actions "identical to" those he is alleged to have committed.

Every federal circuit court to consider the constitutionality of the scheduling of marijuana as a Class I drug has applied the rational basis standard of review and upheld the statute. *See Sacramento Nonprofit Collective v. Holder*, 552 Fed. App'x. 680 (9th Cir. 2014) (allowing that the use of medical marijuana is more accepted today, but refusing to conclude that the legalization of marijuana for medical use removed from public debate the question of its value or amounted to recognition of a recognized right to its use); *United States v. Canori,* 737 F.3d 181 (2nd Cir. 2013) (noting, in a challenge to Ogden Memo, that the Second Circuit had previously

upheld constitutionality of classification of marijuana as Schedule I drug); *United States v. White Plume,* 447 F.3d 1067, 1075-1076 (8th Cir. 2006) (finding that there was no fundamental right at issue, thus refusing to apply strict scrutiny analysis and concluding that the classification of marijuana under Schedule I was "neither arbitrary nor irrational" and "passes muster under the rational basis test"); *see also United States v. Burton,* 894 F.2d 188, 192 (6th Cir. 1990); *United States v. Fry,* 787 F.2d 903, 905 (4th Cir. 1986); *United States v. Middleton,* 690 F.2d 820, 824 (11th Cir. 1982); *United States v. Erwin,* 602 F.2d 1183, 1185 (5th Cir. 1979); *United States v. Miroyan,* 577 F.2d 489, 495 (9th Cir. 1978) ("The constitutionality of the marijuana laws has been settled" so "we need not again engage in the task of passing judgment on Congress's legislative assessment of marijuana."). This Court finds no basis to disagree with or depart from the reasoning and holdings of these prior decisions, and accordingly rejects the defendant's equal protection argument.[4]

## III.   CONCLUSION

For all of the foregoing reasons, it is respectfully recommended that the defendant's motion to dismiss be denied. The parties are hereby advised that under the provisions of Federal Rule of Criminal Procedure 59(b) any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of

---

[4] Finally, in March 2016 the defendant sought leave to append to his memorandum an *amicus* brief the Solicitor General filed at the request of the U.S. Supreme Court in the matter of *Nebraska v. Colorado,* 136 S. Ct. 1034 (2016) . (Dkt. No. 197). The defendant argues that the government's brief in that matter adds support to one or more of the arguments he advances here. After review and consideration of the defendants' submissions, as well as the government's response, the Court finds that neither the Solicitor General's brief nor the Supreme Court's decision in *Nebraska* has any bearing on any of the issues raised in the present motion. At a minimum, they do not strengthen the defendant's position or alter the Court's conclusion that the motion should be denied.

Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 59(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  August 12, 2016